**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVSION**

| | |
|---|---|
| JAMALLA BROWN, *individually, and on behalf of a class of similarly situated persons*, <br><br> Plaintiff, <br><br> v. <br><br> LAKEVIEW LOAN SERVICING, LLC, and LOANCARE, LLC, <br><br> Defendants. | Case No. <br><br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

1.     Plaintiff, on behalf of herself and all others similarly situated, alleges breaches of contract and violations of the North Carolina Debt Collection Act, the North Carolina Mortgage Debt Collection and Servicing Act, and the North Carolina Unfair and Deceptive Trade Practices Act against Defendants Lakeview Loan Servicing, LLC and LoanCare, LLC (collectively, "Defendants").

2.     Defendant Lakeview Loan Servicing, LLC ("Lakeview") is the fourth largest mortgage-loan servicer in the country.  On its website, Lakeview claims that it "helps" more than 1.4 million customers per year with payment of their mortgages.

3.     LoanCare, LLC ("LoanCare") is a mortgage loan subservicer that performs servicing-related functions with regard to the mortgage loans that Lakeview services, including Plaintiffs' loans.

4.     Defendants routinely violate state law, and breach the uniform terms of borrowers' mortgages ("Uniform Mortgages") by charging and collecting illegal processing fees ("Pay-to-Pay

Fees") when borrowers make their monthly mortgage payments by telephone, by automated telephone system payment ("Interactive Voice Response" or "IVR") or online ("Pay-to-Pay Transactions").

5.      Defendants charge borrowers Pay-to-Pay Fees of $15.00 for payment over the telephone, $12.00 for IVR payment, and $10 for online payment.

6.      On information and belief, the actual cost for Defendants to process online mortgage payment transactions is very low—well below the Pay-to-Pay Fees that Defendants charge mortgagers. Defendants pocket the difference as pure profit.

7.      North Carolina state law prohibits Defendants from collecting any amount in addition to the principal obligation unless *such amount is explicitly stated in the agreement creating the debt or permitted by law*. But Pay-to-Pay Fees are found nowhere in the Uniform Mortgages and are not permitted by state debt collection law. Defendants are not permitted under state law or the Uniform Mortgages to convert borrowers' attempts to pay their mortgages into a profit center for itself.

8.      The Federal Housing Administration ("FHA") requires all loan servicers, including Defendants, to be approved by the FHA before servicing any loans. Loan servicers, like Defendants, are paid loan servicing fees out of the interest paid by FHA borrowers. In exchange for the regular loan servicing fees paid by from borrowers' monthly interest payments, Defendants and other FHA approved loan servicers agree to follow the FHA's rules regarding loan servicing, as implemented by the Secretary of Housing and Urban Development ("HUD").

9.      In addition, FHA approved- loan servicers, like Defendants, may collect additional revenue for additional work performed for the borrower. But the uniform FHA mortgage agreement explicitly limits additional fees only to those specific fees authorized by the Secretary of HUD. Exhibit A, ¶ 13.

2

10.     Despite their uniform contractual obligations to charge only fees explicitly allowed under the Uniform Mortgages and applicable law, and for FHA mortgages, only those fees approved by the HUD Secretary, Defendants leverage their position of power over homeowners and demand exorbitant Pay-to-Pay Fees. Even if some fee were allowed, the mortgage uniform covenants and applicable law only allow Defendants to pass along the actual costs of fees incurred to it by the borrowers—here, only a few cents per transaction.

11.     Plaintiff paid these Pay-to-Pay Fees and they bring this class action lawsuit individually and on behalf of all similarly situated putative class members, to recover the unlawfully charged Pay-to-Pay Fees and to enjoin Defendants from continuing to charge these unlawful fees.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S. Code § 1332(d), because diversity exists between the Defendants and at least one class member and the matter in controversy exceeds $5,000,000.

13.     This Court has personal jurisdiction because Defendants each transact business in North Carolina and commits torts in North Carolina, as described in this Complaint.

14.     Venue is proper because a substantial portion of the events alleged herein occurred within this District.

## PARTIES

15.     Plaintiff Jamalla Brown (individually, "Plaintiff Brown" or "Ms. Brown") is a natural person residing in Belmont, North Carolina who has an FHA-insured mortgage loan serviced and/or subserviced by Defendants. Ms. Brown makes loan payments online, and each time she does so, Defendants charge her a Pay-to-Pay Fee. For example, and as detailed below, on August 15, 2019 and

3

September 13, 2019, Lakeview charged Ms. Brown a $10.00 Pay-to-Pay Fee for making payments online.

16.     Defendant Lakeview Loan Servicing, LLC is a Delaware limited liability company with a principal place of business at 4425 Ponce de Leon Boulevard, 5th Floor, Coral Gables, Florida, 33146.

17.     Defendant LoanCare, LLC is a Virginia limited liability corporation with a principal place of business at 3637 Sentara Way, Virginia Beach, Virginia 23452

## APPLICABLE LAW AND SERVICING RULES

**North Carolina Debt Collection Act ("NCDCA")**

18.     The NCDCA offers broad protection to consumers from underhanded methods used by unscrupulous creditors and debt collectors. It applies broadly.

19.     The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. Gen. Stat. § 75-50(3).[1] It allows recovery against both creditors collecting debts in their own names, and those whose primary business is debt collection via loan servicing.

20.     A "consumer" under the NCDCA is "any natural person who incurred a debt or alleged debt for personal, family, household or agricultural purposes." N.C. Gen. Stat. § 75-50(1).

21.     A "debt" under the NCDCA is "any obligation owed or due or alleged to be owed or

___

[1] The statute does not apply to collection agencies, however, which are subject to the North Carolina Collection Agency Act ("NCCAA"), N.C. Gen. Stat. § 58-70-1 to -155. Based on the information known to Plaintiff as of the filing of this complaint, neither Defendants is a "collection agency" within the meaning the NCCAA, as they have not purchased delinquent debt. Plaintiff will amend to add claims under the NCCAA if discovery reveals that either Defendant is in fact a collection agency.

4

due from a consumer." N.C. Gen. Stat. § 75-50(2).

22. The NCDCA prohibits "debt collectors" from "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge." N.C. Gen. Stat. § 75-55(2). Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the NCDCA.

**North Carolina Mortgage Debt Collection and Servicing Act ("NCMDCSA")**

23. The NCMDCSA incorporates the definition of the word "servicer" from the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i), which in turn defines servicer as the person responsible for servicing of the loan, except those who also make or hold the loan. *See* N.C. Gen. Stat. § 45-90(2).

24. A "home loan" under the NCMDCSA is defined as a "loan secured by real property located in this State used, or intended to be used, by an individual borrower or individual borrowers in this State as a dwelling, regardless of whether the loan is used to purchase the property or refinance the prior purchase of the property or whether the proceeds of the loan are used for personal, family, or business purposes." *See* N.C. Gen. Stat. § 45-90(1).

25. The NCMDCSA requires that any fee charged by a servicer "be otherwise permitted under applicable law and the contracts between the parties." *See* N.C. Gen. Stat. § 45-91(4). Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the NCMDCSA.

**North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA")**

26. The NCUDTPA broadly prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce. *See* N.C. Gen. Stat. § 75-1.1. Seeking to collect a debt that includes a Pay-to-Pay Fee violates this provision of the

NCUDTPA.

**FHA Servicing Rules**

27. The Federal Housing Administration, an agency within the United States Department of Housing and Urban Development, "provides mortgage insurance on loans made by FHA-approved lenders throughout the United States and its territories."[2] The FHA "is the largest insurer of mortgages in the world, insuring over 47.5 million properties since its inception in 1934."[3]

28. The FHA provides incentives to private lenders to make loans to would-be homebuyers whose creditworthiness and inability to contribute a significant down payment make it difficult for them to obtain a home loan on reasonable terms.

29. To achieve that goal, "FHA mortgage insurance provides lenders with protection against losses as the result of homeowners defaulting on their mortgage loans. The lenders bear less risk because FHA will pay a claim to the lender in the event of a homeowner's default."[4]

30. The FHA restricts who can make and service FHA loans. "Only FHA-approved Mortgagees may service FHA-insured Mortgages," and those "Mortgagees may service Mortgages they hold or that are held by other FHA-approved Mortgagees." (*Id.*)

31. Defendant Defendants is an FHA-approved Mortgagee.

32. As an FHA-approved Mortgagee, Defendants must annually "acknowledge that the Mortgagee is now, and was at all times throughout the Certification Period, subject to all applicable HUD regulations, *Handbooks*, Guidebooks, Mortgagee Letters, Title I Letters, policies and requirements, as well as Fair Housing regulations and laws including but not limited to 24 CFR §

---

[2] HUD.gov – The Federal Housing Administration,
https://www.hud.gov/program_offices/housing/fhahistory (last visited on April 9, 2020).
[3] *Id.*
[4] *Id.*

5.105, Title VIII of the Civil Rights Act of 1968 (the Fair Housing Act) and Title VI of the Civil Rights Act of 1964."[5]

33. HUD's servicing requirements restrict the fees and charges an FHA-approved Mortgagee may collect from the typically lower-income FHA borrower. HUD Handbook 4000.1: *Single-Family Housing Policy*, https://www.hud.gov/sites/documents/40001HSGH.PDF (last accessed by counsel on April 28, 2020) (the "HUD Handbook").

34. HUD makes clear "[t]he Mortgagee must fully comply with all of the following standards and procedures when servicing a Mortgage insured by the Federal Housing Administration." *Id.*

35. These mandatory restrictions include limits on the types and amounts of fees and charges an FHA-approved Mortgagee may collect from a borrower.

36. FHA-insured mortgages contain uniform covenants.

37. In one such uniform covenant, the parties to the mortgage agree that "Lender may collect fees and charges ***authorized*** by the Secretary [of Housing and Urban Development]." Ex. A at ¶ 13 (emphasis added).

38. This provision incorporates by reference HUD's limits on allowable fees.

39. The HUD Handbook states that lenders:

> may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and ***as authorized by HUD*** below. All fees ***must*** be:
>
> - reasonable and customary for the local jurisdiction;
>
> - based on the actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; ***and***

---

[5] *See*, FHA Lender Annual Certifications: Supervised and Nonsupervised Mortgagees, Changes Implemented 8/1/2016, https://www.hud.gov/sites/documents/SFH_COMP_SUPERNONSUPER.PDF (last visited on May 8, 2020) (emphasis added).

- within the maximum amount allowed by HUD.

HUD Handbook at 617-618 (emphasis added). In other words, lenders may only collect fees that are authorized by HUD, and fees that are authorized by HUD are only those fees that meet all three of the specified criteria. Thus, for example, a fee that is within the maximum amount allowed by HUD but also generates a profit for the lender would not be allowed.

40.     To determine "the maximum amount allowed by HUD" for a fee, a lender must consult Appendix 3.0 of the HUD Handbook, which contains an exhaustive list of the servicing fees and charges authorized by HUD and the maximum amounts that may be charged for such fees.[6] Pay-to-Pay Fees are not on that list.

41.     The HUD Handbook further states "The Mortgagee must not charge the Borrower" for "costs of telephone calls, telegrams, personal visits with the Borrower, certified mail, or other activities that are normally considered a part of a prudent Mortgagee's servicing activity." HUD Handbook at 618.

42.     The HUD Handbook provides that a "Mortgagee may request approval from the National Servicing Center (NSC) for any fee, charge, or unusual service not specifically mentioned in this *SF Handbook*." HUD Handbook at 618.

43.     Based upon information and belief, the Pay-to-Pay Fees that Defendants collect from borrowers exceed its out-of-pocket costs by several hundred percent, and thus violate mandatory HUD servicing rules that are incorporated into all FHA-insured mortgages. Moreover, because the Pay-to-Pay fees are both a cost in connection with a telephone call, and not included on Appendix

---

[6] In the PDF version of the HUD Handbook, the term "maximum amount allowed by HUD" contains a hyperlink that, when clicked, brings the reader to Appendix 3.0.

3.0, they, are not authorized, even if they are based on actual cost of work and are reasonable and customary for the given geographic region.

## FACTUAL ALLEGATIONS

### The Mortgage-Servicer Industry

44.     Mortgage lenders rarely service their own loans. In many cases, lenders specialize in the origination of the loan, but they are not equipped to handle the day-to-day administrative tasks that come with a mortgage. Instead of managing these duties in-house, they assign the servicing rights of their loans to a designated servicer—a company that specializes in the actual management and administration of mortgages.

45.     A mortgage servicer and/or subservicer is a company that, in turn, handles the day-to-day administrative tasks of a mortgage loan, including receiving payments, sending monthly statements and managing escrow accounts.

46.     Lakeview is a mortgage loan servicer that operates throughout the country.

47.     LoanCare is a mortgage loan subservicer that operates throughout the country

48.     Each time a mortgage borrower whose loan is serviced and/or subserviced by Defendants makes a payment over the phone or online, Defendants charge the borrower a Pay-to-Pay Fee of $15.00 for payment over the telephone, $12.00 for IVR payment and $10.00 for online payment. Upon information and belief, LoanCare collects these Pay-to-Pay Fees at Lakeview's direction, and both Defendants share in the profits.

49.     The usual cost that a loan servicer pays to process Pay-to-Pay Transactions payments is much less for each transaction than the amounts Defendants charge Plaintiff and the putative class members.

50. Therefore, the actual cost for Defendants to process telephone Pay-to-Pay Transactions is substantially below the amounts charged to borrowers for making those payments, and Defendants illegally pocket the difference as profit.

51. The mortgages of Plaintiff and the purported classes that Defendants service and/or subservice are Uniform Mortgages; that is, they are FHA and/or Fannie Mae/Freddie Mac Uniform Instruments used when originating Single-Family residential mortgage loans.

52. The Uniform Mortgages of Defendants' customers do not authorize Defendants to charge Pay-to-Pay Fees.

53. At most, the mortgage uniform covenants allow Defendants to pass along only the actual cost of fees incurred by it to the borrower.

54. Defendants violate the borrowers' Uniform Mortgages when they assesses such fees. Defendants frequently, intentionally, and persistently collect Pay-to-Pay Fees even though such fees are not authorized by the Uniform Mortgages and they therefore had no right to collect them.

*Plaintiff Brown*

55. On or around April 23, 2019, Plaintiff Brown obtained a mortgage loan from Fairway Independent Mortgage Corporation secured by her home in Belmont, North Carolina (the "Mortgage Agreement").

56. The Mortgage Agreement is attached as **Exhibit A**.

57. Ms. Brown obtained the mortgage loan secured by her property for personal, family or household uses.

58. After Ms. Brown closed on the loan in April 2019, Lakeview acquired the servicing rights to the loan by way of an assignment.

10

59.     Pursuant to the terms of the promissory note signed by Ms. Brown, her loan payments are due on the first day of each month.

60.     Ms. Brown occasionally makes mortgage payments online.

61.     Each time she does so, Defendants charge her a Pay-to-Pay Fee.

62.     For example, on August 15, 2019, Ms. Brown made a mortgage payment online and Defendants charged her a $10 Pay-to-Pay Fee for making that online payment.

63.     On September 13, 2019, Ms. Brown made a mortgage payment online and Defendants charged her a $10 Pay-to-Pay Fee for making that online payment.

64.     Ms. Brown made timely mortgage payments and was never in default under the terms of the Mortgage Agreement.

65.     These fees are not authorized by the Mortgage Agreement.

66.     Defendants collect the Pay-to-Pay Fees even though such fees are not authorized under the Mortgage Agreement.

67.     Defendants' principal purpose is to collect debt, and they regularly collect debts which are owed and due another. Thus, Defendants are also "collectors" under the MCDCA.

68.     Defendants collected the Pay-to-Pay Fees even though they knew that such fees were not authorized under the Mortgage Agreement, and that they therefore had no right to collect them.

69.     Ms. Brown, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

70.     Ms. Brown's Mortgage Agreement states that the mortgage "shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., North Carolina law. *See* Ex. A ¶ 15.

11

71.     HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Handbook. *See* HUD Handbook 4000.1, FHA Single Family Housing Policy Handbook § III.A.1.f. Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III.A.1.f.(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III.A.1.f.(C).

72.     As set forth in paragraphs 37-43 herein, the HUD Handbook does not authorize Pay-to-Pay Fees. Defendants have not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

73.     Like other FHA mortgages, the Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 13. By assessing Pay-to-Pay Fees not "authorized by the Secretary," Defendants violated the uniform covenants of the Mortgage Agreement.

74.     Defendants' collection of the Pay-to-Pay Fees also breached the provision of the Mortgage Agreement prohibiting the lender from charging fees that are "expressly prohibited by this Security Instrument or by Applicable Law." *See* Ex. A ¶ 13. Defendants' collection of the Pay-to-Pay Fees violated the NCDCA and the NCMDCSA ("the law of the jurisdiction in which the Property is located") because the Mortgage Agreement does not expressly allow Lakeview to charge Pay-to-Pay Fees. *See* N.C. Gen. Stat. § 75-55(2) (making it illegal to collect "any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge"); N.C. Gen. Stat. § 45-91(4) (requiring that any fee charged by a servicer "be otherwise permitted under applicable

law and the contracts between the parties"). Since Defendants collected Pay-to-Pay Fees in violation of Applicable Law, they breached the uniform covenants of the Mortgage Agreement.

75.     Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, Defendants have breached their contracts on a class-wide basis.

76.     Even if Defendants are allowed to collect a fee under the auspice that it is a default-related fee under Paragraph 9 of the Mortgage Agreement, Defendants' demand for payment of Pay-to-Pay Fees was a direct breach of that paragraph, too. Paragraph 9 states that only "amounts *disbursed* by Lender under this Section 9 shall become additional debt of Borrower." **Ex. A** ¶ 9. Defendants collected more than the amounts disbursed to process the Pay-to-Pay Transactions

77.     Defendants acted deceitfully by assessing Ms. Brown Pay-to-Pay Fees that it was not authorized to collect, and by charging her more in Pay-to-Pay Fees than it actually disbursed to process the Pay-to-Pay Transactions.

78.     Prior to filing this Complaint, Ms. Brown made a written pre-suit demand upon Defendants.

79.     Defendants were given a reasonable opportunity to cure the breaches complained of herein but failed to do so.

## CLASS ACTION ALLEGATIONS

80.     Plaintiffs bring this action under Fed. R. Civ. P. 23 on behalf of the following classes of persons (collectively, "Classes"), subject to modification after discovery and case development:

**FHA Pay-to-Pay Class:** All persons in the United States (1) with an FHA-insured mortgage (2) originated, serviced or subserviced by Lakeview or LoanCare, or both (3) who were charged one or more Pay-to-Pay fee, and (4) whose mortgages provide that "Lender may collect fees or charges authorized by the Secretary," or language substantially similar.

**North Carolina Class**: All persons (1) with a residential mortgage loan securing a property in North Carolina, (2) serviced or subserviced by Lakeview, LoanCare, or

13

both, and (3) and who paid a fee to Defendants for making a loan payment by telephone, IVR, at an ATM, or the internet, during the applicable statutes of limitations through the date a class is certified.

81. Excluded from the FHA Pay-to-Pay Class are all class members in the following civil actions: *Andrea Sanders, et al. v. LoanCare, LLC,* Case No. 2:18-cv-09376 (C.D. Cal.); *Paul E. Cheney v. Lakeview Loan Servicing, LLC,* Case No. 3:20-cv-03016 (N.D. Cal.); and *Jonathan Wayne Owoc v. LoanCare, LLC,* Case No. 0:20-cv-60805 (S.D. Fla.).

82. Further excluded from the Classes are the Defendants; any entities in which they have a controlling interest; their agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

83. Members of the Classes ("Class Members") are identifiable through Defendants' records and payment databases.

84. Plaintiff proposes that she be appointed as class representative.

85. Plaintiff and the Classes have all been harmed by the actions of Defendants.

86. Numerosity is satisfied. Upon information and belief, there are thousands of Class Members. Individual joinder of these persons is impracticable.

87. There are questions of law and fact common to Plaintiff and the Classes, including, but not limited to:

    a.   Whether Defendants violated the NCDCA by charging Pay-to-Pay Fees not due;

    b.   Whether Defendants violated the NCMDCSA by charging Pay-to-Pay Fees not due;

    c.   Whether Defendants violated the NCUDTPA by charging Pay-to-Pay Fees not due

    d.   Whether Defendants breached their mortgage agreements by charging Pay-to-Pay Fees not due;

14

e. Whether Defendants costs for the Pay-to-Pay Transactions are less than the amount it charged for Pay-to-Pay fees;

f. Whether Plaintiff and Class Members are entitled to injunctive relief;

g. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages as a result of Defendants' actions; and

h. Whether Plaintiff and Class Members are entitled to attorney's fees and costs.

88. Plaintiff's claims are typical of the claims of class members. Defendants charged Plaintiff Pay-to-Pay Fees in the same manner as the Class Members. Plaintiffs and the Class Members entered into uniform covenants in their Mortgage Agreements that prohibit Pay-to-Pay charges. Alternatively, if Defendants are allowed under the Mortgage Agreements to charge Pay-to-Pay Fees, such amount is capped at the actual amounts disbursed by Defendants to process the Pay-to-Pay Transactions.

89. Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class Members and she will fairly and adequately protect the interests of the Classes. Plaintiff has taken actions before filing this Complaint, by hiring skilled and experienced counsel, and by making a pre-suit demand on behalf of Class Members to protect the interests of the class.

90. Plaintiff has hired counsel that is skilled and experienced in class actions and are adequate class counsel capable of protecting the interests of the class members.

91. Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of this controversy.

15

92.     The likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

### COUNT I
### VIOLATION OF THE NORTH CAROLINA DEBT COLLECTION ACT
### N.C. Gen. Stat. § 75-55(2)
### On Behalf of Plaintiff Brown and the North Carolina Class

93.     All prior and subsequent paragraphs are hereby incorporated by reference.

94.     Plaintiff and the North Carolina Class Members engaged in consumer transactions when they took out mortgages in order to acquire real property for personal, family, or household uses. Plaintiff took out the mortgage loan secured by his property and now serviced by Defendants for personal, family, or household uses. *See* N.C. Gen. Stat. § 75-50(1).

95.     The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer. N.C. Gen. Stat. § 75-50(3). The NCDCA applies to Defendants because they attempt to collect alleged debts arising out of consumer transactions, when they collect a debt associated with consumer mortgages.

96.     Defendants violated N.C. Gen. Stat. § 75-55(2) when they attempted to collect, and collected, any part of Defendants' fee or charge for services rendered, and when they attempted to collect, and collected a "charge, fee or expense incidental to the principal debt" when they were not legally entitled to such a fee or charge a debt associated with mortgage payments.

97.     Defendants knew that the Mortgage Agreements of Plaintiff and the North Carolina Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and that Defendants did not have a right to collect the fees or charges they paid to third parties, such as Western Union, for Pay-to-Pay services rendered. Defendants also knew that the Pay-to-Pay fees charged were unauthorized charges, fees, or expenses that were incidental to the underlying debt. Defendants knew that they were collecting more than the cost to process the Pay-to-Pay Transactions when they

16

collected the Pay-to-Pay Fees. Despite this knowledge, Defendants represented to Plaintiff and the North Carolina Class Members that they had the right to collect Pay-to-Pay Fees and collected them from Plaintiff and the North Carolina Class Members.

98.     As a result of Defendants' violations of the NCDCA, Plaintiff and the North Carolina Class Members were harmed.

**COUNT II**
**VIOLATION OF THE NORTH CAROLINA MORTGAGE DEBT COLLECTION AND SERVICING ACT**
**N.C. Gen. Stat. § 45-91(4)**
**On Behalf of Plaintiff Brown and the North Carolina Class**

99.     All prior and subsequent paragraphs are hereby incorporated by reference.

100.     Plaintiff and the North Carolina Class Members have "home loans" as they obtained mortgages for real property in North Carolina that were intended to be used as dwellings. *See* N.C. Gen. Stat. § 45-91(4).

101.     The NCMDCSA incorporates the definition of the word "servicer" from the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(i), which in turn defines servicer as the person responsible for servicing of the loan, except those who also make or hold the loan.  The NCMDCSA applies to Defendants because they service the loans of Ms. Brown and the North Carolina Class Members; however, they do not hold these loans nor are they the lender.

102.     Defendants violated N.C. Gen. Stat. § 45-91(4) when they charged Pay-to-Pay fees that were not permitted by applicable law nor the Mortgage Agreements between Defendants and Plaintiff and the North Carolina Class.

103.     Defendants knew that the Mortgage Agreements of Plaintiff and the North Carolina Class Members did not expressly authorize Defendants to collect Pay-to-Pay Fees, and that Defendants did not have a right to collect the fees under applicable law. Despite this knowledge,

17

Defendants represented to Plaintiff and the North Carolina Class Members that they had the right to collect Pay-to-Pay Fees and collected them from Plaintiff and the North Carolina Class Members.

104. At least 30 days before the filing of this complaint, Plaintiff notified Defendants of this violation to an address appearing on Defendants communications. Defendants did not respond.

105. As a result of Defendants' violations of the NCMDCSA, Plaintiff and the North Carolina Class Members were harmed.

106. To the extent required, this cause of action is being pled in the alternative.


## COUNT III
## VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### N.C. Gen. Stat. §75-1.1
### On Behalf of Plaintiff Brown and the North Carolina Class

107. All prior and subsequent paragraphs are hereby incorporated by reference.

108. Defendants engaged in "commerce" as defined by N.C. Gen. Stat. § 75-1.1 when they attempted to collect, and collected, a debt associated with mortgage payments.

109. Defendants generally violated the NCUDTPA under N.C. Gen. Stat. § 75-1.1 when they engaged in unfair and deceptive practices in trade or commerce by taking advantage of consumers in claiming and collecting amounts not owed.

110. Defendants never informed Plaintiff when she made her payments online that the actual cost to Defendant for the Pay-to-Pay Fee was less than the amount charged to Plaintiff.

111. Defendants never informed Plaintiff when she made her payments online process that the collection of the Pay-to-Pay fee was not allowed under her deed of trust.

18

112.     The NCUDTPA also makes illegal violations of statutes intended to prohibit unfair and deceptive acts or practices within specific industries. The NCDCA and NCMDCSA were enacted to prohibit unfair and deceptive acts within the debt collection and servicing industries. Thus, by violating the NCDCA and NCMDCSA, there is a per se violation of the NCUDTPA.

113.     As a result of Defendants' NCUDTPA violations, Plaintiff and the North Carolina Class Members suffered substantial damage, including but not limited to financial damage incurred from Defendants' unlawful Pay-to-Pay Fees.

114.     To the extent required, this cause of action is being pled in the alternative.

**COUNT IV**
**BREACH OF CONTRACT**
**On Behalf of Plaintiff Brown and the North Carolina Class**
**and the FHA Pay-to-Pay Class**

115.     All prior and subsequent paragraphs are hereby incorporated by reference.

116.     Plaintiff and the Class Members are parties to contracts with Defendants. Defendants became bound as assignees to the mortgages held by Plaintiff and the Class Members when Defendants became the servicer and/or subservicer of their mortgage loans. Defendants breached its contracts with Plaintiff and the Class Members when they charged Pay-to-Pay Fees in violation of the Uniform Mortgages and in excess of the amounts actually disbursed by Defendants to pay for the cost of the Pay-to-Pay Transactions.

117.     Plaintiff and the Class Members suffered damages when Defendants violated its contracts with them by assessing Pay-to-Pay Fees.

118.     Plaintiff purchased a home subject to the Mortgage Agreement. *See* Ex. A. When Defendants accepted an assignment of such mortgage and became the servicer and/or subservicer of the mortgage, they became parties to the Mortgage Agreement. Thus, Defendants became bound as

Case 3:20-cv-00280-FDW-DSC   Document 1   Filed 05/14/20   Page 19 of 44

assignees by the Mortgage Agreement with Plaintiff whereby money was lent to Plaintiff to purchase property in exchange for certain payment over time. *See* Ex. A ¶¶ 12, 19.

119.     Plaintiff sometimes makes her mortgage payments online. When she does, Defendants charge her a Pay-to-Pay Fee. For example, Defendants charged Ms. Brown $10.00 to pay her mortgage online, including on or about August 15, 2019 and September 13, 2019. These fees were not authorized by the Mortgage Agreement.

120.     The Mortgage Agreement states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located," i.e., North Carolina. Ex. A ¶ 15.  It further states that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." *Id.* ¶ 13.

121.     "Applicable Law" is defined as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions." Ex. A at 2, ¶ J.

122.     Defendants' collection of the Pay-to-Pay Fees violated the NCDCA because the North Carolina Mortgage does not expressly allow Defendants to charge Pay-to-Pay Fees. *See* N.C. Gen. Stat. § 75-55(2) (making it illegal to "collect[]or attempt[] to collect from the consumer all or any part of the debt collector's fee or charge for services rendered [or] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such a fee or charge").

123.     Defendants' collection of the Pay-to-Pay Fees also violated the NCMDCSA, because neither North Carolina law nor the Mortgage Agreement expressly permit Defendants to charge them. *See* N.C. Gen. Stat. § 45-91(4) (requiring that services collect only fees "permitted under applicable law and the contracts between the parties").

124. By violating the NCDCA and the NCMDCSA ("Applicable Law"), Defendants breached Paragraphs 13 and 15 of the Mortgage Agreement.

125. Even if the Pay-to-Pay Fees could somehow be construed as a default-related fee under ¶ 9, "Protection of Lender's Interest in the Property and Rights Under This Security Instrument" section, that section permits only "amounts *disbursed* by lender" to become the debt of the borrower. *See* Ex. A ¶ 9 (emphasis added). By assessing more than the amounts it actually disbursed to the balance of Ms. Brown's mortgage, Defendants violated ¶ 9 of the Mortgage Agreement.

126. Plaintiff, like many borrowers, has an FHA mortgage, meaning that the mortgage is issued by an FHA-approved lender and insured by the FHA. The uniform covenants of the FHA mortgages state that the lender may only assess fees authorized by the Secretary of HUD.

127. HUD permits servicers of FHA mortgages to collect "allowable fees and charges," i.e., fees and charges specifically delineated in Appendix 3 to the HUD Single Family Housing Policy Handbook ("Servicing Handbook"). *See* Handbook 4000.1, FHA Single Family Housing Policy Handbook § III(A)(1)(f). Servicers seeking to assess fees "not specifically mentioned" in the Servicing Handbook must request approval from the National Servicing Center to charge such fees. *Id.* § III(A)(1)(f)(B). HUD prohibits servicers from charging the borrower for "activities that are normally considered a part of a prudent Mortgagee's servicing activity. *Id.* § III(A)(1)(f)(C)."

128. The Handbook does not authorize Pay-to-Pay Fees. Defendants has not sought authorization from the National Servicing Center to charge Pay-to-Pay Fees.

129. Like other FHA mortgages, the Mortgage Agreement states that "Lender may collect fees and charges authorized by the Secretary." Ex. A ¶ 13. By assessing Pay-to-Pay Fees not

Case 3:20-cv-00280-FDW-DSC   Document 1   Filed 05/14/20   Page 21 of 44

"authorized by the Secretary," Defendants violated the uniform covenants of the Maryland Mortgage Agreement.

130.     Because the above provisions are contained in the "Uniform Covenants" section of the Mortgage Agreement, Defendants have breached their contracts on a class-wide basis.

131.     Plaintiff and the members of the FHA Class and the North Carolina Class were damaged by Defendants' breaches.

**COUNT V**
**UNJUST ENRICHMENT**
**On Behalf of Plaintiff and the North Carolina Class and the FHA Pay-to-Pay Class**
**(pled in the alternative to breach of contract claims)**

132.     All prior and subsequent paragraphs are hereby incorporated by reference.

133.     Plaintiff and the Class Members conferred benefits on Defendants. Namely, Plaintiff and the Class Members paid Pay-to-Pay Fees to Defendant.

134.     Defendants' retention of these benefits is unjust because Defendants had no right to collect the Pay-to-Pay Fees under the Uniform Mortgages or applicable law.

135.     Plaintiff and the Class Members are entitled to restitution and Defendants are required to disgorge the benefits it unjustly obtained.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.     An order certifying the proposed classes pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent them;

2.     Monetary and/or equitable relief in an amount to be determined at trial;

3.     Statutory damages and/or penalties, including treble damages;

4.     Punitive or exemplary damages;

5.     Pre- and post-judgment interest to the extent provided by law;

6.     Attorneys' fees and costs of suit, including costs of notice, administration, and expert fees; and

7.     Such other legal or equitable relief, including injunctive or declaratory relief, as the Court may deem appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

Dated: May 14, 2020                                     Respectfully submitted,

/s/ W. Stacy Miller, II
W. Stacy Miller II, Esq.
Gavin A. Bell, Esq.
MILLER LAW GROUP, PLLC
2424 Glenwood Avenue
Raleigh, NC 27608
Phone: (919) 348-4361
Fax: (919) 729-2953
Stacy@MillerLawGroupNC.com
gavin@MillerLawGroupNC.com

Hassan A. Zavareei (*pro hac vice* application to be filed)
Kristen G. Simplicio (*pro hac vice* application to be filed)
Katherine M. Aizpuru (*pro hac vice* application to be filed)
TYCKO & ZAVAREEI LLP
1828 L Street NW, Suite 1000
Washington, D.C. 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
kaizpuru@tzlegal.com

Victor S. Woods (*pro hac vice* application to be filed)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Tel.: 304-345-65557yu6
Fax: 304-342-1110
vwoods@baileyglasser.com
*Attorneys for Plaintiffs*

23

# EXHIBIT
# A

Type: CONSOLIDATED REAL PROPERTY
Recorded: 4/23/2019 10:33:40 AM
Fee Amt: $64.00 Page 1 of 20
Gaston, NC
Susan S. Lockridge Register of Deeds

BK 5037 PG 584 - 603

# Deed of Trust

MIN: 100392411203993731

| FHA Case No. |
| --- |
| 387-4068094-703 |

Return To:
INDECOMM GLOBAL SERVICES

MS-FD-FW-9909, 1260 ENERGY LANE
ST. PAUL, MN 55108

Prepared By:
AMESHA GAUSE
FAIRWAY MORTGAGE
4201 MARSH LANE
CARROLLTON, TX 75007
704-707-3690

Name of Mortgage Broker: FAIRWAY INDEPENDENT MORTGAGE CORPORATION

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.
(A) "Security Instrument" means this document, which is dated APRIL 23, 2019 , together with all Riders to this document.
(B) "Borrower" is
JAMALLA BROWN, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.

387-4068094-703                                              8580004659

FHA Deed of Trust With MERS-NC                                9/30/2014
Bankers Systems™ VMP ®                                  VMP4N(NC) (1606).01
Wolters Kluwer Financial Services                              Page 1 of 16



submitted electronically by "W Porter Rhoton III Attorney at Law PA"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Gaston County Register of Deeds.

Book: 5037 Page: 584 Seq: 1

(C) "Lender" is
FAIRWAY INDEPENDENT MORTGAGE CORPORATION

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF TEXAS
Lender's address is
4201 MARSH LANE, CARROLLTON, TX 75007

(D) "Trustee" is
CYNTHIA PORTERFIELD

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated APRIL 23, 2019    . The Note states that Borrower owes Lender
ONE HUNDRED SEVENTY FIVE THOUSAND NINE HUNDRED FIFTY FOUR & NO/100

Dollars (U.S. $175,954.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 01, 2049

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider        ☒ Planned Unit Development Rider
☐ Rehabilitation Loan Rider
☐ Other [Specify] *
*

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

---

387-4068094-703                                                          8580004659

FHA Deed of Trust With MERS-NC                                           9/30/2014
Bankers Systems™ VMP ®                                                   VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                                        Page 2 of 16

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Secretary" means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the County of     GASTON                                                            :

*(Name of Recording Jurisdiction)*

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES.

387-4068094-703

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8580004659
8/30/2014
VMP4N(NC) (1506).01
Page 3 of 18

Case 3:20-cv-00280-FDW-DSC   Document 1   Filed 05/14/20   Page 27 of 44

Parcel ID Number: 300400
which currently has the address of
432 SPRING GARDENS DR                          *(Street)*
BELMONT                   *(City)*, North Carolina 28012    *(Zip Code)* ("Property Address"):

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together
with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this
Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower
understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's
successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the
right to foreclose and sell the Property; and to take any action required of Lender including, but not limited
to, releasing and canceling this Security Instrument.
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.
THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.   **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the
     principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
     Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and
     this Security Instrument shall be made in U.S. currency. However, if any check or other instrument
     received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
     Lender may require that any or all subsequent payments due under the Note and this Security Instrument
     be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)
     certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon
     an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic
     Funds Transfer.

     Payments are deemed received by Lender when received at the location designated in the Note or at such
     other location as may be designated by Lender in accordance with the notice provisions in Section 14.
     Lender may return any payment or partial payment if the payment or partial payments are insufficient to
     bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument
     and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender
     may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any
     rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but
     Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic
     Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.
     Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If
     Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or
     return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal

---

387-4068094-703                                                              8580004659

FHA Deed of Trust With MERS-NC                                               9/30/2014
Bankers Systems™ VMP ®                                          VMP4N(NC) (1606).01
Wolters Kluwer Financial Services                                           Page 4 of 16

balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

387-4068094-703

8580004659

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(NC) (1506).01
Page 5 of 16

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that

387-4068094-703

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8580004659

9/30/2014
VMP4N(NC) (1506).01
Page 6 of 16

Book: 5037  Page: 584  Seq: 6

Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

387-4068094-703                                                              8580004659

FHA Deed of Trust With MERS-NC                                               9/30/2014
Bankers Systems™ VMP ®                                                       VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                                            Page 7 of 16

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

    If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

    Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument,

387-4069094-703

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8580004659

9/30/2014
VMP4N(NC) (1506).01
Page 8 of 16

Book: 5037 Page: 584 Seq: 8

(b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial

---

387-4068094-703

8580004659

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(NC) (1506).01
Page 9 of 16

taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the

---

387-4068094-703

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8580004659

9/30/2014
VMP4N(NC) (1606).01
Page 10 of 16

terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.

387-4068094-703          8580004659

FHA Deed of Trust With MERS-NC          9/30/2014
Bankers Systems™ VMP ®          VMP4N(NC) (1506).01
Wolters Kluwer Financial Services          Page 11 of 16

Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

387-4068094-703                                                         8580004659

FHA Deed of Trust With MERS-NC                                          6/30/2014
Bankers Systems™ VMP ®                                              VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                                       Page 12 of 16

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any

387--4068094-703                                                                8580004659

FHA Deed of Trust With MERS-NC                                                  8/30/2014
Bankers Systems™ VMP ®                                                          VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                                              Page 13 of 16

Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

    If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

    Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of

387-4068094-703

FHA Deed of Trust With MERS-NC
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

8580004659

9/30/2014
VMP4N(NC) (1506).01
Page 14 of 16

Case 3:20-cv-00280-FDW-DSC   Document 1   Filed 05/14/20   Page 38 of 44

5.000% of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** Attorneys' fees must be reasonable. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
JAMALLA BROWN                       -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                        -Borrower

387-4068094-703                                                      8580004659

FHA Deed of Trust With MERS-NC                                       9/30/2014
Bankers Systems™ VMP ®                                               VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                                    Page 15 of 16

Acknowledgment    NC
State of _____
County of _____ GASTON
I, _____ Rebekah R Valour _____, a notary public, do hereby certify that
JAMALLA BROWN

personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official stamp or seal on _____ 4-23-2019 _____ .

_____
*Notary Public*

My commission expires: _____ 10-31-2022 _____

```
Rebekah R. Valour
NOTARY PUBLIC
Gaston County, North Carolina
Commission Expires October 31, 2022
```

LOAN ORIGINATION ORGANIZATION: FAIRWAY INDEPENDENT MORTGAGE CORPORATION
NMLS ID: 2289
LOAN ORIGINATOR: BRIAN BOOTH FLOYD
NMLS ID: 1168312

387-4068094-703                                8580004659

FHA Deed of Trust With MERS-NC                           9/30/2014
Bankers Systems™ VMP ®                              VMP4N(NC) (1506).01
Wolters Kluwer Financial Services                         Page 16 of 18

## Exhibit A

BEING the full contents of Lot No. 208 of WATER'S EDGE SUBDIVISION, Map 4, as shown on plat of survey recorded September 20, 2018, in Plat Book 88, Page 55, in the Gaston County Public Registry, to which plat reference is made for a more particular description.

Being the same property conveyed to Grantor/Borrower(s) herein from Brookline Homes, LLC, by deed recorded this same date in the Gaston County Public Registry.

Property Address: 432 Spring Gardens Drive, Belmont, NC 28012
Parcel #: 300400

# Planned Unit Development Rider

FHA Case No.
387-4068094-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23RD day of **APRIL**, **2019** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**FAIRWAY INDEPENDENT MORTGAGE CORPORATION**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

432 SPRING GARDENS DR, BELMONT, NORTH CAROLINA 28012

(Property Address)
The Property Address is a part of a planned unit development ("PUD") known as
WATER'S EDGE

(Name of Planned Unit Development)

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

387-4068094-703
FHA PUD Rider
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

8580004659
September 2014
VMP589U (1502).00
Page 1 of 3

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

387-4068094-703
FHA PUD Rider
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

8580004659
September 2014
VMP589U (1502).00
Page 2 of 3



Book: 5037  Page: 584  Seq: 19

By signing below, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

BORROWER(S)

_____ (Seal)     _____ (Seal)
JAMALLA BROWN

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

387-4068094-703                               8580004659
FHA PUD Rider                                 September 2014
Bankers Systems™ VMP®                         VMP589U (1502).00
Wolters Kluwer Financial Services             Page 3 of 3