# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### DOCKET NO. 3:20-cv-00280-FDW-DSC

| | | |
|---|---|---|
| **Jamalla Brown,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **Loancare, LLC** | ) | |
| **Lakeview Loan Servicing, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

THIS MATTER is before the Court on Defendant Loancare, LLC's ("Defendant Loancare" or "Defendant") Motion to Dismiss. (Doc. No. 15). Plaintiff filed a Response in Opposition, (Doc. No. 24), to which Defendant replied. (Doc. No. 29). Both parties have also filed Notices of Supplemental Authority. (Doc. Nos. 30, 34, 35). After carefully reviewing the parties' briefing, the Court hereby GRANTS IN PART and DENIES IN PART Defendant Loancare, LLC's Motion to Dismiss.

## I.    BACKGROUND

Plaintiff filed her Complaint on May 14, 2020. (Doc. No. 1). She brings her claims as a putative class action against Defendants Lakeview Loan Servicing, LLC ("Lakeview") and Defendant Loancare, LLC ("Loancare"). Id. at p. 1. She asserts several causes of action against Defendants, all arising out of what she contends is an unlawful "Pay-to-Pay" service fee arrangement. Id. at pp. 1-2. In early 2019, Plaintiff obtained a mortgage from Fairway Independent Mortgage Corporation, which is secured by her home in Belmont, North Carolina. Id. at p. 10. Defendant Lakeview allegedly acquired the servicing rights to the mortgage shortly after Plaintiff

closed on her loan.[1] Id. Defendant Loancare is a mortgage subservicer and allegedly collects payments, including the "Pay-to-Pay" fees at issue here, on behalf of Defendant Lakeview. Id. at p. 7. Plaintiff alleges she timely pays her mortgage payments each month and occasionally makes her payments online. Id. at 11. Plaintiff asserts she was charged a $10 fee for each mortgage payment made online and alleges Defendants profited on these fees in violation of existing law. Id. Plaintiff alleges these "Pay-to-Pay" fees are neither authorized by her Mortgage Agreement, nor otherwise permitted by law. Id. Accordingly, she argues, Defendants have violated the North Carolina Debt Collection Act ("NCDCA"), the North Carolina Mortgage Debt Collection and Servicing Act ("NCMDCSA" or "MDSCA"), and/or the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). Id. at pp. 16-18. Plaintiff also alleges Defendants are liable for breach of contract or alternatively, unjust enrichment. Id. at pp. 19, 22.

Defendant Loancare filed a Motion to Dismiss on July 2, 2020, arguing Plaintiff has failed to state a claim for each cause of action.[2] (Doc. No. 15).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief

---

[1] Noticeably lacking from the Complaint however, are allegations pointing to the existence of a Servicing Agreement or an explanation as to how either Defendant obtained the right to service Plaintiff's mortgage payments.
[2] Defendant Lakeview has filed an Answer to the Complaint. (Doc. No. 18).

that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co.,

Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." Id. The Supreme Court has

also opined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
> statement of the claim showing that the pleader is entitled to relief." Specific facts
> are not necessary; the statement need only "give the defendant fair notice of what
> the . . . claim is and the grounds upon which it rests." In addition, when ruling on a
> defendant's motion to dismiss, a judge must accept as true all of the factual
> allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (alteration in original) (internal citations omitted)

(quoting Twombly, 550 U.S. at 555-56).

### III.   ANALYSIS

In its Motion to Dismiss, Defendant Loancare addresses each alleged cause of action but

first argues more generally that the filed rate doctrine requires dismissal of Plaintiff's Complaint

in its entirety. (Doc. No. 16, p. 10). In North Carolina, "[t]he filed rate doctrine provides that a

plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is

nonetheless excessive because it is the product of unlawful conduct." [3] N.C. Steel, Inc. v. Nat'l

Council on Compensation Inc., 496 S.E.2d 369, 372 (N.C. 1998). Defendant Loancare argues the

"Pay-to-Pay" fees are disclosed to the North Carolina Office of the Commissioner of Banks

---

[3] Subject matter jurisdiction in this case is premised on 28 U.S.C. § 1332; as such, North Carolina law applies.
Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.E.2d 659 (1996) (citing Erie
R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

("NCOCB") and because they have not been disapproved, the fees are thus approved and protected by the doctrine.

Defendant has not provided any applicable authority extending the filed rate doctrine in a context other than insurance. See Hooks v. Am. Med. Sec. Life Ins. Co., No. 3:06-cv-71, 2008 WL 3911130, at *4 (W.D.N.C. Aug. 19, 2008) ("The North Carolina Supreme Court has held that the filed rate doctrine applies to the *insurance industry* in this state." (emphasis added) (quoting N.C. Steel, 496 S.E.2d at 372)). Accordingly, the Court DENIES this portion of the Motion to Dismiss and will address Defendant's arguments for each cause of action in turn.

### a. North Carolina Debt Collection Act

In Count I of her Complaint, Plaintiff alleges Defendant violated the NCDCA, specifically N.C. GEN. STAT. § 75-55(2), by charging her "Pay-to-Pay" fees when she paid her mortgage online. (Doc. No. 1, p. 16). Section 75-55(2) provides that "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means," which includes "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." § 75-55(2). Defendant argues Plaintiff has failed to state a claim under this section because Plaintiff cannot establish that she was subject to debt collection or that Loancare is a debt collector. (Doc. No. 16, pp.18-19).

The NCDCA defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer." N.C. GEN. STAT. § 75-50(3). Plaintiff alleges Defendant Loancare falls under this definition because it "attempt[s] to collect alleged debts arising out of consumer transactions, when [it] collect[s] a debt associated with consumer mortgages." (Doc. No. 1, p. 16). Whether mortgage loan servicers and subservicers are debt collectors under this

4

definition has not yet been addressed by North Carolina courts; thus, this Court has the task of determining how North Carolina appellate courts would rule. See Kline v. Wheels by Kinney, Inc., 464 F.2d 184, 187 (4th Cir. 1972) (quotations and citation omitted). After considering a range of authority, the Court concludes Plaintiff has failed to state a claim against Defendant Loancare under the NCDCA.

First, North Carolina courts generally look to the Fair Debt Collection Practices Act ("FDCPA") as non-binding guidance for interpreting the NCDCA. See Reid v. Ayers, 531 S.E.2d 231, 233-34 (N.C. Ct. App. 2000). Thus, application of the FDCPA is persuasive. Notably, mortgage servicers are not "debt collectors" within the meaning of the FDCPA. See, e.g., IAR Family Trust v. Suntrust Mortg., Inc., No. 3:13-cv-418, 2014 WL 1432378, at *3 (W.D.N.C. Apr. 14, 2014) (citing Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985)); King v. KB Invs. & Realty LLC, No. 5:11-cv-389, 2011 WL 7797155 (E.D.N.C. Oct, 14, 2011); Jenkins v. BAC Home Loan Servicing, LP, 822 F.Supp. 2d 1369, 1374 (M.D. Ga. 2011) (citing Warren v. Countrywide Home Loans, Inc., 342 Fed.Appx. 458, 460 (11th Cir. 2009)). Thus, the FDCPA does not support a finding that Defendant Loancare is a debt collector under the NCDCA. However, because the FDCPA is "much broader" than the NCDCA, Reid, 531 S.E.2d at 234, this is not the end of the inquiry.

Second, a review of relevant case law supports the conclusion that Plaintiff has not stated a claim against Defendant Loancare under the NCDCA. In so concluding, the Court finds a recent case within the Fourth Circuit instructive. In Austin v. Lakeview Loan Servicing, LLC et al., No. 20-1296, 2020 WL 7256564 (D. Md. Dec. 10, 2020), the District of Maryland evaluated a case virtually identical to the one at bar. In Austin, the plaintiff sued defendants Lakeview and Loancare—the exact same Defendants here—for charging "Pay-to-Pay" fees when she made

5

mortgage payments online. <u>Austin</u>, 2020 WL 7256564, at *1. The plaintiff alleged the defendants violated Maryland's Consumer Debt Collection Act ("MCDCA") in charging such "Pay-to-Pay" fees.[4] <u>Id.</u> In dismissing the MCDCA claim against Defendant Loancare with prejudice, the court held Defendant Loancare was not "engaged in debt collection" *because* "the [p]laintiff was never in default." <u>Id.</u> at *5.

Indeed, the North Carolina Court of Appeals has intimated that "debt collection" under the NCDCA only occurs when a consumer has defaulted on an amount owed. <u>See</u> <u>Friday v. United Dominion Realty Trust, Inc.</u>, 575 S.E.2d 532, 536 (N.C. Ct. App. 2003) ("We hold that defendant, in seeking to recover *past due* rent and related charges, is a debt collector as defined under the NCDCA." (emphasis added)). The default requirement has also found support in number of cases applying debt collection statutes analogous to the NCDCA. <u>See, e.g.</u>, <u>Crowley v. JPMorgan Chase Bank, Nat'l Ass'n</u>, No. 15-00607, 2015 WL 6872896, at *8 (D. Md. Nov. 9, 2015) ("The right to collect a debt typically vests when a debtor defaults on the debt."); <u>Turner v. PHH Mort. Corp.</u>, 467 F.Supp. 3d 1244, 1247 (M.D. Fla. 2020) ("[T]he Court concludes [defendant loan servicer] is not a debt collector because . . . the debtor was not in default."); <u>cf.</u> <u>Alvarez v. LoanCare LLC</u>, No. 20-21837-CIV-ALTONAGA, 2020 WL 5514410, at *3 (S.D. Fla. Aug. 28, 2020) (denying motion to dismiss when plaintiff was not in default because state debt collection statute applied more broadly to "persons" rather than to "debt collectors").

Here, Plaintiff has not alleged Defendant Loancare has sought any past due mortgage payments; to the contrary, Plaintiff has alleged she has never been in default on her mortgage payments. (Doc. No. 1, p. 11). Thus, because Plaintiff was not in default when she made mortgage

---

[4] The Plaintiff in <u>Austin</u> also alleged claims under the Maryland Consumer Protection Act, a claim for breach of contract, and a claim for unjust enrichment. <u>Austin</u>, 2020 WL 7256564, at *1. All claims against Defendant Loancare were dismissed with prejudice. <u>Id.</u> at *7.

payments online or via phone, Defendant Loancare was not engaged in "debt collection" when servicing Plaintiff's loans in the manner alleged.

The Court also finds it persuasive that the North Carolina General Assembly has enacted two distinct statutory schemes, one of which regulates debt collection and one of which regulates mortgage debt collection and servicing. Compare N.C. Gen. Stat. § 75-50 *et seq* with N.C. GEN. STAT. § 45-90 *et seq*. Indeed, North Carolina's Mortgage Debt Collection and Servicing Act ("NCMDCSA") explicitly regulates mortgage loan servicers "regardless of whether the loan [being serviced] is considered in default or the borrower is in bankruptcy." § 45-91, 92; see also In re Paylor, 604 B.R. 222, 225 (Bankr. M.D.N.C. 2019) ("Chapter 45 of the North Carolina General Statutes governs mortgages and deeds of trust, including *mortgage debt collection* and servicing under Article 10." (emphasis added)).

The NCMDCSA also explicitly regulates mortgage loan servicers and loan servicing more generally, including the assessment of fees. See § 45-90(2) (referencing the federal Real Estate Settlement Procedures Act to define servicing as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan"); see also § 91(4). In contrast, the NCDCA makes no such explicit reference to mortgage loan servicers. See § 75-50 *et seq*. Moreover, by enacting the NCMDCSA 30 years *after* the NCDCA, the General Assembly evinced an intent to regulate the mortgage debt collection industry as distinct from debt collection more generally. See Mortgage Debt Collection Act, 2007 N.C. Laws S.L. 2007-351 (H.B. 1374); Debt Collection Act, 1977 N.C. Laws S.L. 1977-747 (H.B. 1050).

Finally, assuming *arguendo* Defendant Loancare is subject to the NCDCA based on the conduct alleged in the Complaint, Plaintiff still fails to state a claim. Once the threshold

requirements for an NCDCA claim are met,[5] a plaintiff must still sufficiently allege the "generalized requirements found in section 75-1.1: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Reid v. Ayers, 531 S.E.2d 231, 235 (N.C. Ct. App. 2000). As discussed below, Plaintiff's allegations regarding charging a service fee for an optional method of payment fail to plausibly suggest the practice is unfair or deceptive. For these reasons, the Court concludes Plaintiff has failed to state a claim for relief under the NCDCA.

### b. North Carolina Mortgage Debt Collection and Servicing Act

The North Carolina Mortgage Debt Collection and Servicing Act ("NCMDCSA") prohibits mortgage loan servicers from charging fees that are not contracted for by the parties or otherwise permitted by law. See N.C. GEN. STAT. § 45-91(4). Plaintiff alleges the "Pay-to-Pay" fees were neither contracted for in her Mortgage Agreement, nor are they otherwise permitted by law. Plaintiff alleges Defendant has accordingly violated the NCMDCSA in assessing such fees. (Doc. No. 1, p. 17). Defendant Loancare argues for dismissal because the NCMDCSA provides a "safe harbor" provision, which allows mortgage servicers to compensate the borrower or otherwise correct any alleged violation of the Act if the mortgage servicer did not act intentionally or in bad faith. (Doc. No. 16, p. 12). Defendant is correct in its assertion of law; however, Plaintiff has plausibly alleged a violation of N.C. GEN. STAT. § 45-91(4) because she has alleged bad faith and/or intentional conduct on the part of Defendants, thus the applicability of the safe harbor provision is not appropriate to resolve at this stage of the proceedings. (Doc. No. 1, pp. 17-18). Accordingly, the Court DENIES the Motion to Dismiss Plaintiff's NCMDCSA claim.

---

[5] To state a claim under the NCDCA, a plaintiff must first show the following: "[f]irst, the obligation owed must be a 'debt'; second, the one owing the obligation must be a 'consumer'; and third, the one trying to collect the obligation must be a 'debt collector.'" Reid v. Ayers, 531 S.E.2d 231, 233 (N.C. Ct. App. 2000).

8

### c. North Carolina Unfair and Deceptive Trade Practices Act

North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA" or "UDTPA") prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). To state a claim under this Act, a plaintiff must allege: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C 2001). A practice or act is deceptive if it has "the tendency or capacity to mislead," and a practice or act is unfair "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 276 S.E.2d 391, 403 (N.C. 1981) (citations omitted). "Whether an act or practice is unfair or deceptive is a question of law for the court." Waddell v. U.S. Bank Nat'l Assoc., 395 F.Supp. 3d 676, 684 (E.D.N.C. 2019) (citations omitted).

Defendant next argues Plaintiff has not sufficiently alleged unfair or deceptive conduct because a claim for breach of contract cannot be transformed into a UDTPA claim and because Plaintiff has not alleged unfair or deceptive practices. (Doc. No. 16, p. 16). In evaluating Defendant's argument, the Court finds Waddell v. U.S. Bank Nat'l Ass'n, 395 F.Supp. 3d 676 (E.D.N.C. 2019), instructive.

In Waddell, the plaintiff sued his mortgage servicer, a bank, alleging the "pay-by-phone" fees he was charged violated the NCDCA, the NCUDTPA, and the terms of his deed of trust. Waddell, 395 F.Supp. 3d at 680. In evaluating the sufficiency of the complaint with regards to the UDTPA claim, the court found the plaintiff did not state a claim for unfair and deceptive trade practices for two reasons. First, the plaintiff did not allege substantial aggravating circumstances, which are required under North Carolina law to transform a breach of contract claim into a UDTPA

claim.[6] Id. at 684 ("A 'mere breach of contract, even if intentional, is not an unfair or deceptive act' by itself." (quoting Bob Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 323 (N.C. Ct. App. 2006))). Second, the practice of "charging customers a fee for paying by phone is not unfair or deceptive under the UDTPA" because the pay-by-phone fees were fees for "an optional service that [the plaintiff] chose for her convenience." Waddell, 395 F.Supp. 3d at 685.

Here, Plaintiff's UDTPA claim also fails. Like the plaintiff in Waddell, Plaintiff here has not alleged any substantial or aggravating circumstances sufficient to allege a violation of the NCUDTPA. See (Doc. No. 1, pp. 18-19). Additionally, and like the plaintiff in Waddell, Plaintiff exercised her option to pay her mortgage either by phone or online. It is not plausible that charging a fee for an optional service, particularly when Plaintiff had alternative means of payment, is unfair or deceptive. See Waddell, 395 F.Supp. 3d at 685; Lish v. Amerihome Mort. Co., LLC, No 2:20-cv-07147, 2020 WL 6688597, at *6-7 (C.D. Cal. Nov. 10, 2020) (holding that a service fee imposed for using an optional payment method was not unfair or deceptive); Messina v. Green Tree Servicing, LLC, 210 F.Supp. 3d 992, 1006 (N.D. Ill. 2016) (finding a service fee imposed for making a mortgage payment by phone was not immoral, unethical, oppressive, or unscrupulous because the plaintiff had alternative means to pay). Accordingly, Plaintiff has failed to state a claim under the NCUDTPA against Defendant Loancare.

### d. Breach of Contract

Plaintiff alleges Defendant Loancare is liable for breach of contract because the Mortgage Agreement states that "Lender may not charge fees that are expressly prohibited by this Security Agreement or by Applicable Law," and Plaintiff contends the "Pay-to-Pay" fees are prohibited by

---

[6] Notably, the breach of contract claim in Waddell was dismissed. Waddell, 395 F.Supp. 3d at 686.

the agreement and by applicable law.[7] (Doc. No. 1, p. 20). Defendant argues for dismissal of the breach of contract claim because Defendant Loancare is not a party to the contract. (Doc. No. 16, p. 21). In her Opposition Motion, Plaintiff argues Defendant Loancare is bound by her Mortgage Agreement because Loancare is an assignee under the Agreement. (Doc. No. 24, p. 22).

To state a claim for breach of contract in North Carolina, a plaintiff must allege "(1) a legal obligation of defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage." Wilkerson v. HSBC Mortg. Svcs., Inc., No. 1:14-cv-275, 2014 WL 6609685, at *3 (M.D.N.C. Nov. 20, 2014) (citation omitted). "[W]here a defendant is not a party to a contract, 'as a matter of law he cannot be held liable for any breach that may have occurred'" Id. (quoting Bryant v. Wells Fargo Bank, Nat. Ass'n., 681 F.Supp. 2d 646, 657 (E.D.N.C. 2012). Thus, Plaintiff's breach of contract claim against Defendant Loancare turns on whether Plaintiff sufficiently alleged Loancare was a valid assignee under the Mortgage Agreement. See Collins v. First Fin. Servs., Inc., No. 7:14-cv-288, 2016 WL 589688, at *14 (E.D.N.C. Feb. 10, 2016). A valid assignment occurs only when there is an "assignor, assignee, and thing assigned." Morton v. Thornton, 131 S.E.2d 378, 380 (N.C. 1963).

Here, Plaintiff has simply alleged Defendant Loancare is "bound as assignee" to the mortgage because Defendant Loancare is a subservicer of the mortgage loan. (Doc. No. 1, p. 19). However, this allegation does not explain how Loancare was assigned the rights and obligations of the Mortgage Agreement. An allegation that a defendant services or subservices a mortgage loan agreement is not, without more, sufficient to bind the servicer to the terms of the agreement.

---

[7] Plaintiff does not point to any portion of her Mortgage Agreement that expressly prohibits the charging of service fees for using an optional payment method. However, Plaintiff alleges that because her Mortgage Agreement is an FHA mortgage, lenders are bound by the uniform covenants in FHA mortgages and such uniform covenants allow lenders to charge only those fees expressly authorized by HUD. (Doc. No. 1, p. 21). Plaintiff alleges the "Pay-to-Pay" fees are not expressly authorized by HUD and are thus expressly prohibited by the Mortgage Agreement. Id.

11

See, e.g., Austin v. Lakeview Loan Servicing, LLC et al., No. 20-1296, 2020 WL 7256564, at *5-6 (D. Md. Dec. 10, 2020) (dismissing breach of contract claim against Loancare because Plaintiff "has failed to allege how LoanCare actually became an assignee of the Mortgage Agreement"); In re Residential Capital, 501 B.R. 531, 543 (Bankr. S.D.N.Y. 2013) (applying North Carolina law and dismissing a breach of contract claim against a mortgage servicer when there was no privity of contract between the servicer and the plaintiffs); Bret Binder v. Weststar Mort., Inc., No. 14-7073, 2016 WL 3762710, at *18 (E.D. Pa. July 13, 2016) (dismissing breach of contract claim against mortgage loan servicer because plaintiff did not specifically allege the obligations that gave rise to the servicer's liability); Mazzei v. Money Store, 308 F.R.D. 92, 109-10 (S.D.N.Y. 2015) (collecting cases all holding that "loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability"). Because Plaintiff has not pled facts plausibly alleging the existence of a valid assignment of the Mortgage Agreement to Defendant Loancare, Plaintiff has failed to state a claim for breach of contract against Defendant Loancare.

### e. Unjust Enrichment

Plaintiff finally advances a claim of unjust enrichment as an alternative to her breach of contract claim. (Doc. No. 1, p. 22). This claim too must fail.

When asserting a claim for unjust enrichment under North Carolina law, a plaintiff must show that "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted the benefit, and (3) the benefit was not conferred officiously or gratuitously." Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, 742 S.E.2d 555, 561 (N.C. Ct. App. 2013). Here, Plaintiff alleges Defendant Loancare's "retention" of the "Pay-to-Pay" fees was unjust because Defendant Loancare had no right to charge such fees. (Doc. No. 1, p. 22). However, Plaintiff's

Complaint makes clear she received the benefit of the services for which she paid—that is, timely payment of her mortgage—which contradicts any allegation that Defendant's retention of the fees is somehow "unjust." See Krebs v. Charlotte Sch. of L., No. 3:17-cv-190, 2017 WL 3880667, at *6 (E.D.N.C. Sept. 5, 2017) ("Payment of . . . fees cannot be unjust if the [payor] received the benefit for which they paid."). Accordingly, Plaintiff has failed to state a claim for unjust enrichment against Defendant Loancare.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant Loancare's Motion to Dismiss. (Doc. No. 15). The Motion is GRANTED with respect to Counts I, III, IV, and V. The Motion is DENIED with respect to Count II.

IT IS SO ORDERED.

Signed: December 16, 2020

Frank D. Whitney
United States District Judge